UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GEORGE CLARK,

               Petitioner,

v.                                                              CASE NO. 08-10523
                                                                HONORABLE VICTORIA A. ROBERTS
KENNETH ROMANOWSKI,

               Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION
## FOR WRIT OF HABEAS CORPUS AND
## GRANTING IN PART A CERTIFICATE OF APPEALABILITY

     This is a habeas corpus proceeding brought by a state prisoner pursuant to 28

U.S.C. § 2254.  Petitioner George Clark ("Petitioner") is challenging his state conviction

for first-degree (premeditated) murder.  Respondent Kenneth Romanowski

("Respondent") urges the Court to deny relief.  The Court reviewed the pleadings and

record, and agrees with Respondent that Petitioner's claims lack merit.  The Habeas

Petition is denied.

## I.  Background

     Petitioner was charged in Wayne County, Michigan with first-degree murder and

felony firearm.  The charges arose from the fatal shooting of Michael Martin on

September 26, 2002, in Inkster, Michigan.  The felony firearm charge was dismissed at

the preliminary examination.  Petitioner and his co-defendant, Kevin Harrington, were

then tried jointly before a single jury in Wayne County Circuit Court.

There was no physical evidence linking Petitioner to the crime, but there was circumstantial evidence that Petitioner and Harrington shot and killed Michael Martin because Martin was unable to pay for drugs that he had bought from Petitioner. Petitioner's defense was that the prosecution's key witnesses, Beria Stewart, Peggy Kreer, and Tammy Wiseman, were not credible witnesses. On February 11, 2003, a Wayne County Circuit Court jury found both Petitioner and Harrington guilty of first-degree murder. Petitioner received a mandatory life sentence.

In an appeal of right, Petitioner alleged that he was denied his right to cross-examine the State's key witness (Beria Stewart) and that he was prejudiced by the egregious conduct of his co-defendant's attorney. The Michigan Court of Appeals rejected these claims and affirmed Petitioner's conviction in an unpublished, *per curiam* opinion. *See People v. Clark*, No. 247847 (Mich. Ct. App. Apr. 28, 2005). Petitioner attempted to file an application for leave to appeal in the Michigan Supreme Court, but the Clerk of the Michigan Supreme Court rejected his application as untimely on July 29, 2005.

Petitioner raised the same two claims and his five additional habeas claims in a motion for relief from judgment filed on April 13, 2006. The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Clark*, No. 274825 (Mich. Ct. App. June 18, 2007). On January 22, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Clark*, No. 134627 (Mich. Sup. Ct. Jan. 22, 2008).

Petitioner filed his habeas corpus petition through counsel on February 5, 2008.

He claims that (1) he was denied his right to cross-examine Beria Stewart, (2) there was insufficient evidence to support the jury's verdict, (3) his co-defendant's attorney deprived him of a fair trial by his egregious misconduct, (4) he was denied his right of confrontation by the admission of Beria Stewart's testimony at two preliminary examinations, (5) newly discovered evidence entitles him to a new trial, and (6-7) he was denied his right to effective assistance of trial and appellate counsel.

Respondent contends that Petitioner's claims are procedurally defaulted and lack merit. Petitioner replies that appellate counsel was "cause" for his failure to raise all his claims on direct review, and that a miscarriage of justice will occur if the Court does not review his claims on their merits.

Procedural default is not a jurisdictional limitation, *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010), and the Court finds it more efficient to address the merits of Petitioner's claims than to analyze whether they are procedurally defaulted. The Court, therefore, will proceed to review Petitioner's claims on their merits, using the following standard of review.

## II. Standard of Review

Petitioner is entitled to habeas corpus relief only if the state court's adjudication of his claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under 28 U.S.C. § 2254(e)(1), a state court's factual

determinations are presumed to be correct unless the habeas petitioner rebuts the presumption of correctness with clear and convincing evidence.

Granting a habeas petition under the "contrary to" clause is only appropriate "if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, a habeas court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

### III. Discussion

### A. Sufficiency of the Evidence

Petitioner alleges that there was insufficient evidence adduced at trial to support the jury's verdict. According to Petitioner, there was no credible evidence to convict him, absent the inadmissible testimony from the preliminary examinations.

The trial court addressed this claim when it ruled on Petitioner's motion for relief from judgment. It stated that "there was ample evidence for a reasonable jury to believe all elements were proven beyond a reasonable doubt." *People v. Clark*, No. 02-013361-

01, at 1 (3d Cir. Ct. July 11, 2006).

### 1. Clearly Established Law

When reviewing a sufficiency-of-the-evidence claim, a habeas court must examine "the evidence in the light most favorable to the prosecution" to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (quoting *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999)).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. In Michigan, the elements of premeditated murder are: (1) the defendant killed the victim and (2) the killing was "willful, deliberate, and premeditated." *People v. Bowman*, 254 Mich. App. 142, 151 (2002) (quoting Mich. Comp. Laws § 750.316(1)(a)). One who aids and abets a crime may be prosecuted, tried, and upon conviction, punished as if he or she directly committed the offense. Mich. Comp. Laws § 767.39.

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. [P]remeditation and deliberation characterize a thought process undisturbed by hot blood." *People v. Morrin*, 31 Mich. App. 301, 329-30 (1971) (footnotes omitted). Premeditation and deliberation may be inferred from "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct

5

after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992). "A pause between the initial homicidal intent and the ultimate act may, in the appropriate circumstances, be sufficient for premeditation and deliberation." *People v. Plummer*, 229 Mich. App. 293, 301 (1998) (citing *People v. Tilley*, 405 Mich. App. 38, 45 (1979)). "Although there is no specific time requirement, sufficient time must have elapsed to allow the defendant to take a 'second look.'" *Id.* at 300 (citing *People v. DeLisle*, 202 Mich. App. 658, 660 (1993), and *People v. Anderson*, 209 Mich. App. 527, 537 (1995)).

### 2. The Facts

The evidence at trial established that Beria Stewart lived about five houses away from Michael Martin and that she knew Petitioner as "Man-Pie" and Kevin Harrington as "K-Dog."  About 11:00 or 11:30 p.m. on September 26, 2002, Stewart was outside her home smoking a cigarette.  She saw Petitioner and Kevin Harrington drive up to Michael Martin's house.  Petitioner got out of the car, walked up to Martin's porch, and began arguing with Martin about some drugs.  Petitioner stated that Martin owed him some money and that he planned to kill Martin if Martin did not give him the money.  Petitioner hit Martin, but he stopped fighting with him long enough to walk back to the car where Harrington was seated.  Petitioner and Harrington then walked back to Martin's porch and began fighting with Martin.  After they dragged Martin to a nearby field, Stewart went inside her house.  She then heard three or four gunshots coming from the direction of the field.  Shortly afterwards, Petitioner and Harrington came to her house.  One of them had a gun and stated that, if she said anything, they would kill her.     Inkster police officer Anthony Abdallah and a few other police officers were dispatched to the crime scene on September 27, 2003.  They found Michael Martin's body in a field by the

housing complex where he lived.  Officer Abdallah later talked to Beria Stewart at the police station.  Stewart was nervous and reluctant to speak at first. Officer Abdallah interpreted Stewart's nervousness and jitteriness as fear.  Although he cussed at Stewart and stated that he would have Social Services pick up Stewart's children if she did not cooperate, he maintained at trial that he did not threaten her.  Petitioner and Kevin Harrington subsequently were arrested, and Ms. Stewart was relocated because she did not feel safe going back to her home.

Peggy Kreer lived in the same housing complex as Michael Martin and Beria Stewart.  On the night in question, she heard Martin say in a loud voice, "Oh," "No," or Don't."  Then she heard three or four gunshots.

Tammy Wiseman testified that, after she was arrested for an unrelated misdemeanor, she spoke to the police and prosecutor pursuant to an investigative subpoena.  During that proceeding and at Petitioner's trial, she explained that Petitioner had asked her to tell his lawyer that she (Wiseman) and Beria Stewart were together on the night of the murder.  According to Wiseman, the defendants wanted her to say that the Inkster Police concocted the crime and that Stewart went along with the concocted story in order to get protection, housing, and money from the police.  After Wiseman testified pursuant to the investigative subpoena, she received threatening telephone calls and letters stating that she should not appear in court.  She was afraid to testify in court because her and her children's lives were being threatened.  At trial, however, she denied being with Beria Stewart on the night of the murder.

An assistant medical examiner testified that Michael Martin died as a result of two gunshot wounds and that there were no signs that he was beat or dragged.  Neither

Petitioner, nor Kevin Harrington, testified or presented witnesses.

### 3. Analysis

A rational juror could have concluded, from the circumstantial evidence, that Petitioner and Harrington killed Michael Martin. Although no witness observed the actual shooting, Beria Stewart saw the events leading up to the shooting. A logical conclusion from her testimony was that Petitioner and Harrington aided and abetted each other in shooting and killing Martin.

A rational juror also could have concluded that the murder was deliberate and premeditated. Petitioner himself was heard saying that he would kill Martin if Martin did not pay him, and Martin apparently denied owing Petitioner any money. Petitioner subsequently went to his car. He and Kevin Harrington then walked back to Martin, began beating him, and dragged him to a field. Beria Stewart heard gunshots coming from the direction of the field shortly afterwards.

There was enough time for Petitioner to think about his conduct and consider his options before he returned to his car the first time and again after he and Harrington fought with Martin and dragged him to the field. This evidence was sufficient to establish the elements of a premeditated and deliberate murder.

Petitioner contends that the Court should not consider evidence of what Beria Stewart said in her videotaped statement to the police and at Petitioner's and Harrington's preliminary examinations because, in his opinion, that evidence was admitted in violation of his constitutional right to confront Stewart. The Supreme Court, however, recently stated that courts must consider all the evidence admitted by the trial court when reviewing a sufficiency-of-the-evidence claim, even if the evidence was

admitted erroneously.  *McDaniel v. Brown*, __ U.S. __, __, 130 S. Ct. 665, 672 (2010)

(*per curiam* opinion quoting *Lockhart v. Nelson*, 488 U.S. 33, 41 (1988)).  Furthermore,

> [a] reviewing court does not reweigh the evidence or redetermine the
> credibility of the witnesses whose demeanor has been observed by the
> trial court.  *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74
> L.Ed.2d 646 (1983).  It is the province of the factfinder to weigh the
> probative value of the evidence and resolve any conflicts in testimony.
> *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the
> credibility of witnesses is generally beyond the scope of federal habeas
> review of sufficiency of evidence claims.  *Gall v. Parker*, 231 F.3d 265,
> 286 (6th Cir. 2000).

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).

Therefore, the Court accepts all the evidence admitted at trial, including Beria

Stewart's testimony at the preliminary examinations and her statement to the police.

She provided circumstantial evidence that Petitioner shot Michael Martin or aided and

abetted Kevin Harrington in shooting Martin.  The evidence also established that the

shooting was premeditated.  Thus, a rational trier of fact, viewing the evidence in the

light most favorable to the State, could have concluded that Petitioner was guilty of first-

degree murder.

The trial court's finding that there was ample evidence of first-degree murder was

not contrary to, or an unreasonable application of, *Jackson*, and Petitioner is not entitled

to relief on the basis of his sufficiency-of-the-evidence claim.

## B.  The Right to Confront Witnesses

The first and fourth habeas claims allege that Petitioner was denied his right to

confront Beria Stewart at trial.  Although the prosecutor attempted to conduct a direct

examination of Stewart, Stewart was unresponsive at times and claimed not to

remember some things.  Consequently, the trial court declared Stewart unavailable.

This ruling occurred before the defense attorneys could cross-examine Stewart. Petitioner contends that he was unable to cross-examine Stewart regarding (1) the answers she gave to the prosecutor's questions and her claimed loss of memory, (2) her testimony at Petitioner's and Kevin Harrington's preliminary examinations, and (3) her videotaped statement to the police.

The Michigan Court of Appeals concluded on review of this claim that the trial court did not deprive Petitioner of his rights under the Confrontation Clause because Petitioner had an opportunity to cross-examine Beria Stewart at his preliminary examination and because Stewart was unavailable at trial. Petitioner points out that he did not have an opportunity to cross-examine Stewart about the testimony that she gave at Kevin Harrington's preliminary examination because that proceeding occurred after Petitioner's preliminary examination. Petitioner also did not have an opportunity to question Stewart about the statements she made at trial in response to the prosecutor's questions. Respondent, however, argues that Petitioner waived his right to confront Ms. Stewart by threatening her.

### 1. Clearly Established Supreme Court Precedent

The Confrontation Clause of the Sixth Amendment "guarantees to a criminal defendant the right 'to be confronted with the witnesses against him.' U.S. Const. amend. VI." *Danner v. Motley*, 448 F.3d 372, 377 (6th Cir. 2006). Ordinarily, testimonial hearsay evidence may not be introduced against a defendant in a criminal trial unless the witness is unavailable and the defendant had a prior opportunity to

cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).[1]

Beria Stewart was declared unavailable during Petitioner's trial, and Petitioner had an opportunity to cross-examine her at his preliminary examination. However, he did not have an opportunity to cross-examine her about her testimony at Kevin Harrington's preliminary examination and that testimony was read into the record at the defendants' joint trial. Petitioner also did not have an opportunity to cross-examine Stewart about the comments she made at trial. Nevertheless, the Court believes that Petitioner forfeited his right to confront Stewart at trial.

The Supreme Court stated in *Crawford* that "the rule of forfeiture by wrongdoing (which [the Supreme Court] accept[s]) extinguishes confrontation claims on essentially equitable grounds." *Id.* at 62. There was some evidence in this case that Petitioner's girlfriend or someone associated with him made a finger-across-the-throat gesture while Beria Stewart was testifying at Petitioner's preliminary examination. The gesture apparently was intended to suggest that Stewart's throat would be slit if she testified against Petitioner. (Tr. Feb. 3, 2003, at 89-96; Tr. July 9, 2004, at 8-9.) Although the prosecution never conclusively proved that the woman who made the gesture was Petitioner's girlfriend, there was other evidence that Petitioner threatened Beria Stewart. Stewart was acquainted with both Petitioner and Harrington from the neighborhood, and

---

[1] Testimonial hearsay includes "[p]rior testimony at a preliminary hearing, before a grand jury, or at a former trial" and "police interrogations." *Crawford*, 541 U.S. at 68. Statements made during a police interrogation are testimonial when the circumstances indicate that there is no ongoing emergency and that the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Under these definitions, Beria Stewart's statement to the police and her testimony at Petitioner's and Kevin Harrington's preliminary examinations constituted "testimony."

she testified at their preliminary examinations that, after the shooting, they threatened to kill her if she said anything about the incident.[2] At Petitioner's subsequent trial, the trial court declared Stewart unavailable because Stewart was "either unable, physically, to answer [the prosecutor's] questions, and certainly mentally she has a problem with answering these questions." (Tr. Feb. 4, 2003, at 34.)

At a post-conviction hearing on Petitioner's motion for new trial, the trial court stated that it remembered Ms. Stewart being on the stand and that Stewart "was clearly intim[id]ated by defense or people related to the defense. She indicated that she couldn't remember. She did receive threats." (Tr. July 9, 2004, at 9-10.) The Michigan Court of Appeals subsequently stated that "the trial court properly declared Stewart unavailable because she was unable to remember facts, *and because she had been threatened and was afraid to testify.*" *Clark*, Mich. Ct. App. No. 247847, at 2 (emphasis added). These findings of fact are entitled to a presumption of correctness because Petitioner has not rebutted the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Court concludes from the record and from the state courts' rulings that Petitioner was responsible for making Stewart unavailable as a witness. Therefore, he forfeited his claims under the Confrontation Clause by his own wrongdoing. *Crawford*, 541 U.S. at 62.

---

[2] At Petitioner's preliminary examination, Stewart testified that Kevin Harrington made the threat and was armed with a gun at the time and that Petitioner was standing beside Harrington when Harrington made the threat. (Tr. Feb. 4, 2003, at 53-54.) At Harrington's subsequent preliminary examination, Stewart testified that Petitioner had the gun, and that "they" (Petitioner and Harrington) informed her they would kill her and her children if she said anything. (*Id.* at 80-81.)

### 3. *Giles v. California*

Petitioner argues that the forfeiture-by-wrongdoing rule does not apply to Confrontation Clause claims because he was not "engaged in conduct *designed* to prevent the witness from testifying." *Giles v. California*, __ U.S. __, __, 128 S. Ct. 2678, 2683 (2008) (emphasis in original). *Giles*, however, established a new rule that does not apply retroactively to cases that became final before it was decided. *Ponce v. Felker*, 606 F.3d 596, 597, 604 (9th Cir. 2010).[3] Petitioner's conviction became final at the close of direct review in 2005. Therefore, the Supreme Court's interpretation of the forfeiture-by-wrongdoing rule in *Giles* is not applicable here.

Even if *Giles* were applicable, Petitioner's and Harrington's threat to kill Stewart if she said anything about the shooting and murder of Michael Martin could be viewed as conduct designed to prevent Stewart from testifying against them. Thus, even under *Giles*, Petitioner's Confrontation Clause claims are foreclosed.

### 4. *Cotto v. Herbert*

Petitioner maintains that the complete denial of his right to cross-examine Beria Stewart at trial was constitutional error. He relies on *Cotto v. Herbert*, 331 F.3d 217 (2d Cir. 2003), a case in which the Second Circuit considered whether "a waiver of confrontation rights can extend even to the cross-examination of a prosecution witness who actually takes the stand and testifies." *Id.* at 249. The Second Circuit held that the complete denial of a petitioner's right to cross-examine a witness who actually testified

---

[3] This Court adopts the Ninth Circuit's thorough analysis on whether *Giles* established a new rule under *Teague v. Lane*, 489 U.S. 288 (1989), and whether *Giles* applies retroactively to cases that became final before the Supreme Court rendered its decision in *Giles*.

at trial was an objectively unreasonable application of clearly established Supreme

Court law.  The reasons given for this conclusion were:

> (1) the absence of any Supreme Court holdings extending the forfeiture of
> confrontation rights to complete preclusion of cross-examination of a
> prosecution witness who actually testifies at trial, juxtaposed against the
> clearly established right to cross-examine adverse witnesses for bias and
> motive to lie; (2) the lack of any reasons why a complete ban was
> necessary and appropriate in this case; and (3) the centrality of
> cross-examination to the truth-seeking process . . . .

*Id.* at 252.

Significantly, the Second Circuit acknowledged that "[t]he Supreme Court has

never dealt with this precise question of the scope of a waiver of the right to

cross-examine a witness because of misconduct, when the witness actually takes the

stand at trial."  *Id.* at 250.  The Second Circuit also acknowledged that there might be

circumstances where a complete preclusion of cross-examination is justified, such as

where a witness who took the stand was so thoroughly intimidated by the defendant that

she refused to answer any questions at all.  *Id.*

Beria Stewart did not refuse to answer all the prosecutor's questions, but she did

become unresponsive when asked about the details of the crime, and she claimed that

there were many things she could not remember.  The questions to which Stewart was

unresponsive or which caused her to say that she could not remember the facts were

the questions which more likely than not would have elicited an incriminating answer.

The prosecutor correctly observed in the jury's absence that Stewart "clammed up" and

lost her memory when she was asked to identify the person who got out of the car.  The

prosecutor concluded that Stewart's fear prevented her from testifying, because Stewart

had consistently informed the prosecutor that she was simply afraid.  (Tr.  Feb. 3, 2003,

at 116-17.)

As previously noted, there was evidence that Petitioner and Kevin Harrington threatened to kill Beria Stewart and her children if she said anything about the crime. The record, as a whole, suggests that Beria Stewart's unresponsiveness and lack of memory at trial were due to being thoroughly intimidated by Petitioner and Kevin Harrington. Furthermore, much of Stewart's testimony at trial was favorable to the defense and did not require cross-examination to establish bias.

The Court concludes that a complete ban on the cross examination of Beria was appropriate. And, because the Supreme Court has never dealt with the scope of a waiver of the right to cross-examine a testifying witness because of misconduct, the state court rulings and decisions were not contrary to, or an unreasonable application of, Supreme Court precedent.

### C. Counsel for Co-Defendant

Petitioner alleges that he was denied a fair trial due to the unprofessional conduct of Kevin Harrington's trial attorney. The Michigan Court of Appeals agreed that Harrington's trial attorney engaged in egregious misconduct. The Court of Appeals nevertheless denied relief because Petitioner's trial counsel conducted himself properly and was not ineffective.

Kevin Harrington's trial attorney was disrespectful to the trial court and to the prosecutor. Petitioner, however, has not pointed to any Supreme Court decision which holds that a habeas petitioner's right to a fair trial is violated by the misconduct of a co-defendant's attorney. Petitioner's own attorney conducted himself professionally, and there is no indication in the record that the conduct of the co-defendant's attorney had

15

an adverse impact on the jury's assessment of Petitioner's case. Furthermore, a defendant "cannot bring an ineffective assistance claim based upon the conduct of another co-defendant's attorney." *United States v. Recendiz*, 557 F.3d 511, 522 (7th Cir. 2009), *cert. denied sub nom Navar v. United States*, __ U.S. __, 130 S.Ct. 340 (2009). Petitioner therefore has no right to relief on the basis of his third claim.

### D. New Evidence

Petitioner purports to have newly discovered evidence that Beria Stewart and Tammy Wiseman recanted their testimony and incriminating statements about him. Petitioner asserts that he is entitled to a new trial on the basis of this new evidence, because he would not have been convicted absent Stewart's and Wiseman's perjured testimony.

### 1. Clearly Established Federal Law

To the extent that Petitioner is claiming the prosecutor relied on perjured testimony at trial, Petitioner "must show (1) that the prosecution presented false testimony, (2) that the prosecution knew was false, and (3) that was material." *Abdus-Samad v. Bell*, 420 F.3d 614, 625-26 (6th Cir. 2005). "[T]he statement[s] in question [must be] 'indisputably false,' rather than merely misleading." *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000). To the extent that Petitioner is claiming to be actually innocent of the murder for which he was convicted, he must show that, "in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006).

### 2. Tammy Wiseman

At Petitioner's trial, Tammy Wiseman testified that Petitioner instructed her to tell his attorney that Wiseman and Beria Stewart were together on the night of the murder, that the Inkster Police concocted the story about Petitioner, and that Stewart went along with the story in order to get protection, housing, and money. Wiseman also claimed that the things Petitioner asked to say were not true and that she did not see Beria Stewart on the day of the murder. Wiseman further testified that, after her conversation with Petitioner, she made a written statement to the police and testified under oath at the prosecutor's office. She subsequently received threatening telephone calls and letters warning her that, for her and her children's sake, she should not appear in court. (*Id.* at 132 -35.)

At one of Kevin Harrington's retrials,[4] Wiseman testified that nobody told her what to say and that Petitioner did not try to influence her testimony. She also denied receiving any threatening letters or telephone calls, and she said that Beria Stewart was with her on the day before Michael Martin's body was found. She claimed that she previously perjured herself and had lied consistently throughout the case. *See* Habeas Pet., Ex. B.

### 3. Beria Stewart

Beria Stewart implicated Petitioner in the murder during her videotaped statement to the police and at Petitioner's and Kevin Harrington's preliminary

---

[4] Kevin Harrington's conviction following the joint trial with Petitioner was set aside due to ineffective assistance of his trial attorney, among other things. According to Petitioner, Kevin Harrington subsequently was tried three additional times. The second and third trials ended in hung juries, and the fourth trial resulted in a conviction.

examinations. At Harrington's re-trials, she testified that her videotaped statement to the police and her testimony at the preliminary examinations were lies. She claimed that she was sleeping when the crime occurred, and she denied being threatened by the defendants after the shooting. She stated that she previously lied about the murder because the Inkster Police threatened to put her in jail and to take her children from her if she did not tell them the truth. Habeas Pet., ex. E.

### 4. Analysis

Even if the Court assumes that Wiseman and Stewart perjured themselves at Petitioner's trial, Petitioner failed to show that the prosecutor knew their testimony was false. Thus, Petitioner has failed to prove a claim of perjury.

He also has failed to make a credible showing of actual innocence. "[A] claim of 'actual innocence' is not itself a constitutional claim," *Herrera v. Collins,* 506 U.S. 390, 404 (1993), and the threshold for a hypothetical claim of actual innocence is "extraordinarily high." *Id.* at 417.

While it is true that Tammy Wiseman and Beria Stewart retracted their incriminating statements about Petitioner during post-conviction proceedings, Stewart admitted during those proceedings that Inkster police officers had made arrangements for her to live in a safe house before and after Petitioner's trial. She and Tammy Wiseman likely felt threatened after Petitioner's and Harrington's joint trial and thought that it was in their best interests to testify differently at Harrington's re-trials. Their recantations must be viewed with extreme suspicion. *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). The fact that Harrington ultimately was re-convicted is some indication that the jurors did not believe the recanting testimony. The Court

rejects Petitioner's claim that he is entitled to a new trial. He has failed to demonstrate that no reasonable juror would find him guilty beyond a reasonable doubt in light of the new evidence.

### E. Trial Counsel

Petitioner alleges next that he was denied his right to effective assistance of counsel as a result of his trial attorney's failure to investigate and call an alibi witness. Petitioner contends that alibi witness Tyrhonda Moore was subpoenaed and ready to testify at Petitioner's trial, but was never called as a witness. The trial court assumed on review of this claim that trial counsel's choice not to pursue an alibi defense was a strategic decision, "especially, as in this case, when the attorney did not believe the alibi to be true." *Clark*, Wayne County Cir. Ct. No. 02-013361-01, at 1-2.

### 1. Clearly Established Federal Law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" or if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

19

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"A number of courts have found ineffective assistance of counsel in violation of the Sixth Amendment where . . . a defendant's trial counsel . . . fails adequately to investigate potential alibi witnesses." *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (collecting cases).  When "asking whether counsel adequately investigated his client's defense, the ultimate inquiry is whether the choice not to conduct additional investigation was "reasonable[ ] in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 691).  "[C]ounsel may 'draw a line when they have good reason to think further investigation would be a waste.'" *Id.*  at 288 (citing *Rompilla v. Beard*, 545 U.S. 374, 383 (6th Cir. 2005)).

## 2.  Application

Petitioner claims in an affidavit dated September 14, 2006, that Tyrhonda Moore was prepared to testify that he was with her at the time of the alleged crime.  According to Petitioner, his trial attorney did not call Ms. Moore as a witness because the attorney did not think Moore was needed and he was confident that they would prevail at trial without her.

Petitioner did not present any witnesses at trial, and his attorney specifically asked the trial court not to read the alibi jury instruction.  (Tr. Feb. 10, 2003, at 204.) Thus, it appears that defense counsel made a strategic decision not to call the Tyrhonda Moore as an alibi witness.

It is unlikely that the jury would have believed Moore even if she had testified that

Petitioner was with her at the time of the murder. She likely would have been perceived as biased as a result of her relationship to Petitioner. Furthermore, her alibi statement does not mention any dates, *see* Habeas Pet., Ex. G, and the hotel receipt that supposedly shows where she and Petitioner stayed on the night of the crime is dated September 27, 2002, the day after the murder. *See* Habeas Pet., Ex. H. While it is possible that Petitioner checked into the hotel shortly after 12:00 a.m. on September 27, 2002, the murder occurred in the same city at approximately 11:30 p.m. on September 26, 2002. Petitioner could have committed the crime and then checked into the hotel.

In addition to these problems with Moore's alibi statement, the testimony at trial established that Beria Stewart was personally acquainted with Petitioner and saw him fighting with Michael Martin shortly before the shooting. There was other evidence that Petitioner tried to persuade Tammy Wiseman to lie to Petitioner's attorney in order to discredit Ms. Stewart's account of the incident.

The Court concludes that Petitioner did not have a credible alibi defense and that defense counsel made a reasonable decision not to conduct additional investigation and not to produce Tyrhonda Moore for trial. Defense counsel was not ineffective for failing to call Tyrhonda Moore as a witness.

### F. Appellate Counsel

The seventh and final habeas claim alleges that Petitioner's first appellate attorney was ineffective for failing to raise all of Petitioner's habeas claims on direct review. More specifically, Petitioner contends that his appellate attorney should have alleged that the admission of Beria Stewart's videotaped statement to the police and testimony at the defendants' preliminary examinations violated his Sixth Amendment

right of confrontation, as interpreted in *Crawford*.

The trial court addressed this claim in its order denying Petitioner's motion for relief from judgment. The trial court opined that Petitioner had failed to show his appellate attorney's decision to raise certain issues and not others was objectively unreasonable and prejudicial to his case.

### 1. Clearly Established Federal Law

An indigent defendant does not have a constitutional right to compel his appointed attorney to raise all nonfrivolous claims if counsel, as a matter of professional judgment, elects not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To prevail on his claim, Petitioner must demonstrate that his appellate attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687.[5]

The "deficient performance" prong requires showing that appellate counsel made an objectively unreasonable decision to raise issues other than the ones Petitioner raised. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010). To show prejudice, Petitioner must demonstrate a reasonable probability that, but for his attorney's failure to raise certain claims on appeal, he would have prevailed. *Id.*

### 2. Application

Petitioner's appellate attorney did not challenge the admission of the preliminary examination transcripts or Beria Stewart's videotaped statement to the police, but she did raise an issue under the Confrontation Clause. She claimed that Petitioner was

[5] The *Strickland* standard applies to claims about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

denied his right to confront Beria Stewart regarding her loss of memory and the answers that she gave to the prosecutor's questions. Petitioner has raised the very same issue here.

The Michigan Court of Appeals, moreover, cited *Crawford* in its decision on direct review and determined that Petitioner was not denied his rights under the Confrontation Clause when the trial court permitted the prosecutor to read Stewart's preliminary-examination testimony into evidence. Thus, the state court reviewed Petitioner's *Crawford* claim even though appellate counsel did not cite the case in her briefs, nor claim that testimony from the preliminary examinations was inadmissible.

Furthermore, this Court has determined that Petitioner forfeited review of his claims under the Confrontation Clause through his own misconduct and that his other claims lack merit. Because the claims lack merit or were forfeited, appellate counsel was not ineffective for failing to raise them. *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner has failed to show that his appellate attorney's performance was deficient and that the allegedly deficient performance prejudiced him. Therefore, he has no right to relief on the basis of his claim about appellate counsel.

### IV. Conclusion

The state courts' opinions and orders did not result in an unreasonable determination of the facts or in decisions that were contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, the Petition for Writ of Habeas Corpus is **DENIED**.

## V.  Certificate of Appealability

The Supreme Court has explained that,

> a prisoner seeking a [certificate of appealability] need only demonstrate "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could debate the Court's resolution of Petitioner's first and fourth claims, which allege a denial of the constitutional right of confrontation. Therefore, a certificate of appealability may issue on claims one and four.  The Court declines to issue a certificate of appealability on the remaining claims.

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 30, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 30, 2010.

s/Linda Vertriest
Deputy Clerk